UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEVEN MATTHEW CLARK, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 2:25-cv-00178-LEW |
| ) | |
| CHRIS ARBOUR, et al., ) | |
| ) | |
| Defendants ) | |

**RECOMMENDED DECISION AFTER REVIEW
OF PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, who is in custody at the Maine Correctional Center, filed a complaint against the Maine Department of Corrections (MDOC) and four of its employees. (Complaint, ECF No. 1.) In addition to his complaint, Plaintiff filed an application to proceed without prepayment of fees (ECF No. 8), which application the Court granted. (Order, ECF No. 9.)

In accordance with the statute that governs actions where a plaintiff proceeds without prepayment of fees, a preliminary review of Plaintiff's complaint was appropriate. 28 U.S.C. § 1915(e)(2). Additionally, Plaintiff's complaint was subject to screening "before docketing, if feasible or … as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Following a review of Plaintiff's original three-page complaint and sixty-pages of supporting materials, I recommended the Court dismiss the matter unless Plaintiff amended his complaint to allege facts that would support an actionable First Amendment retaliation

claim. (Recommended Decision, ECF No. 11.) Subsequently, Plaintiff filed a seventy-eight-page amended complaint and two additional supporting documents, which filings he labeled as a supplement to the original complaint.[1] (Amended Complaint, ECF No. 14.) More recently, Plaintiff filed a document in which he includes additional conduct that he contends supports his claim of a constitutional violation. (Attachment, ECF No. 18.)

Plaintiff's amended complaint and attachments are subject to the preliminary review contemplated by 28 U.S.C. §§ 1915 and 1915A. Because Plaintiff has alleged additional facts that require the Court's assessment, I withdraw the prior recommended decision. Following a review of Plaintiff's amended complaint, I recommend the Court dismiss the matter.

## FACTUAL ALLEGATIONS

Plaintiff received a master's degree and since has pursued a Ph.D. in positive psychology from the California Institute for Human Science over several years while incarcerated at the Maine State Prison. He obtained the requisite MDOC approval and had a paid internship. Plaintiff alleges that beginning in 2020, he has experienced an escalating series of write-ups and interference with his educational resources, including the periodic loss of access to his computer. According to Plaintiff, on one occasion, he lost access to his computer one week before an important interview. Plaintiff asserts Defendant Sphar made negative comments about the interview and forced Plaintiff to cancel the interview.

---

[1] The amended complaint seeks to add six defendants, all employees at the Maine Correctional Center.

Plaintiff alleges that he was prevented from participating in and completing the Ph.D. program after he complained that he was sexually harassed by Defendant Getz.

In early 2024, Plaintiff was told that he was being transferred to the Maine Correctional Center and would be placed in a single cell to pursue his education without interference. After the transfer, Plaintiff was not placed in a single cell and his equipment was not returned. He also asserts that following his transfer to the Maine Correctional Center, he has been "harassed, hazed, and retaliated against" by Defendant Lyman, an officer at the correctional center.

Plaintiff further alleges that in June 2025, he was moved to disciplinary segregation without explanation until a hearing that was conducted after the move. Plaintiff asserts that the conditions within segregation were unhealthy, which conditions included black mold and dust.

Plaintiff contends that Defendants violated his due process rights by imposing three computer suspensions, including the termination of internet privileges, and multiple disciplinary sanctions, without a meaningful opportunity to be heard, conspired to prevent him from participating in his educational program, retaliated against him, unlawfully revoked his right to participate in his Ph.D. program, and breached an agreement for him to participate in the Ph.D. program.

In late August 2025, Plaintiff was transferred back to the Maine State Prison. At least initially, he was placed in "close custody" or a "starter pod," which limits his ability to engage in programs and does not provide an opportunity for employment. He is also missing more items of personal property. Plaintiff filed two complaints in Superior Court

pursuant to Maine Rule of Civil Procedure 80C challenging the alleged deprivation of personal property and the administrative findings related to false statements that Plaintiff allegedly made.

## LEGAL STANDARD

28 U.S.C. § 1915 is designed to ensure meaningful access to the federal courts for individuals unable to pay the cost of bringing an action. When a party is proceeding pursuant to § 1915, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint

'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "This is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).

## DISCUSSION

### A. 42 U.S.C. § 1983 Claims[2]

#### 1. Due Process

Plaintiff seeks to assert a due process claim against Defendants based on his transfer to segregation and the suspension of his computer access without prior notice and hearing.[3]

The Fourteenth Amendment states in part that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. This protection has both substantive and procedural components. *Amsden v. Moran*,

---

[2] Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

[3] Plaintiff also alleges that his due process rights were violated by the interruptions in his education and remote job, arguing that he has a property and/or liberty interest in continuing his education and job. "The types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than 'an abstract need or desire,' and must be based on more than 'a unilateral hope.' Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). Protected liberty interests may arise from the Due Process Clause and the laws of the states, *id.*, while state law, "rules or understandings that secure certain benefits and that support claims of entitlement" to benefits can create property interests. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Because I find Plaintiff has not stated a due process claim on other grounds, I do not reach whether Plaintiff's educational plans or job might constitute a property or liberty interest.

904 F.2d 748, 753–54 (1st Cir. 1990). In either context, "a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005).

To the extent that Plaintiff intended to assert that the law required a pre-deprivation hearing before (1) the initial transfer to segregation or (2) the imposition of computer restrictions following allegations that Plaintiff violated prison policies, the claim fails. Courts have consistently found such temporary restrictions to be insufficient to violate a protected liberty interest and are justified based on exigent circumstances within the prison environment. *See Skinner v. Cunningham*, 430 F.3d 483, 486 (1st Cir. 2005) (immediate transfer to heightened security pending an investigation "with no hearing or other process whatsoever, gives rise to no claim under the due process clause"). Due process typically requires a hearing before the imposition of conditions representing an atypical and significant hardship, including permanent or indefinite segregation, *see id.* at 486–87, but Plaintiff was evidently provided such a hearing and merely contests the outcome of the process.

To the extent that Plaintiff challenges the destruction or withholding of his personal property or some other post-deprivation challenge, because Plaintiff does not challenge the procedures provided by the State of Maine or allege the absence of post-deprivation state remedies, Plaintiff has not stated a procedural due process claim.[4] *See Lambert v.*

---

[4] Plaintiff would likely have no grounds on which to assert inadequate post-deprivation remedies. The Maine Law Court has recognized that prisoners can appeal to the state courts from administrative rulings

6

*Fiorentini*, 949 F.3d 22, 28 (1st Cir. 2020) ("A [post-deprivation] procedural due process claim that does not allege the unavailability of constitutionally-adequate remedies under state law fails") (internal quotation marks omitted); *Zinermon v. Burch*, 494 U.S. 113, 126 ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."). Further, although Plaintiff alleges that when Defendants restricted his computer access and placed him in segregation the prison failed to follow its own disciplinary procedures and policies, even a bad faith violation of local policies or state law does not imply a violation of due process. *Amsden v. Moran*, 904 F.2d 748, 757 (1st Cir. 1990).

The substantive guarantee of the Due Process Clause "rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990). "The substantive component of the Due Process Clause is violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Espinoza v. Sabol*, 558 F.3d 83, 87 (1st Cir. 2009) (quotation omitted); *see also Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (conduct must be "extreme and egregious," "truly outrageous, uncivilized, and intolerable," "stunning").

---

made by the Department of Corrections on prisoner grievances. *Fleming v. Comm'r Dep't of Corr.*, 2002 ME 74, ¶ 9, 795 A.2d 692, 695 (Maine Rule of Civil Procedure 80C(i) allows not only a review of final agency action, but also an independent claim for damages where appropriate). In addition, under the Maine Tort Claims Act, governmental entities are liable for property losses arising from the operation or maintenance of any public building. 14 M.R.S. § 8104-A(2). Maine law thus affords an individual an adequate remedy for the negligent or intentional destruction of personal property in the form of a common law conversion claim. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800. Indeed, Plaintiff is evidently now pursuing Rule 80C relief in state court.

Plaintiff's allegations regarding the confiscation of property, his placement in segregation, and the termination of his education program do not satisfy the high burden required for a substantive due process claim. *See, e.g.*, *Cummings v. McIntire*, 271 F.3d 341, 346 (1st Cir. 2001) (collecting cases).

### 2. First Amendment

Plaintiff alleges that many Defendants engaged in a retaliation campaign against him in violation of the First Amendment. To state a First Amendment retaliation claim, a plaintiff must show: (1) that he or she engaged in conduct protected by the First Amendment; (2) that the defendant took adverse action against the plaintiff because of the protected conduct; and (3) that the adverse action was more than de minimis, i.e., was sufficient to deter a plaintiff of ordinary firmness from exercising his or her first amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). Although the amended complaint includes multiple references to "retaliation," most of the references are in the context of the alleged adverse action taken against Plaintiff, rather than describing the alleged protected conduct and the relationship between the conduct and the adverse action.

Plaintiff previously alleged that the adverse actions resulted from some unspecified speech he made about sexual harassment. He now also alleges that he was disciplined for helping other prisoners file grievances. Plaintiff also provided a document in support of his amended complaint wherein he alleged that he has experienced adverse action because one defendant mistakenly believed that Plaintiff had provided information about criminal conduct of a guard with whom that defendant was romantically involved. That is, Plaintiff

asserts that Defendants took adverse action against him for something he is alleged to have said but did not say. As alleged, therefore, Plaintiff did not engage in any protected conduct that would support a retaliation claim. Finally, Plaintiff alleges that "starting as early as 2020" he "filed complaints against [Defendant] Getz for sexual harassment and for her attacks on his school." (Amended Complaint ¶ 20.) As reflected by Plaintiff's allegation, the gravamen of Plaintiff's complaint appears to be that, despite support from the prison administration, Defendant Getz consistently undermined his educational pursuits even before he made any complaints against Defendant Getz, which would be inconsistent with Plaintiff's retaliation contention.

Plaintiff essentially alleges any action taken by any known or unknown state official to limit or interfere with his educational program is retaliatory. For example, in his latest filing, Plaintiff does not specify who was responsible for the recent change to his housing assignment, but he alleges that the recent transfer back to the Maine State Prison, placement in a starter pod, and suspension from the educational department "add to the retaliation of the Maine Department of Corrections." (Attachment at 3, ECF No. 18.) Plaintiff, however, has not alleged sufficient facts that would support a finding that Defendants unlawfully took adverse action against him based on protected conduct. In other words, Plaintiff's retaliation-related allegations are too vague, contradictory, and conclusory to plausibly support a finding that the alleged adverse actions were based on protected conduct and improper retaliatory motive. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676–77 (2009).

Plaintiff also appears to allege that the cancellation of an important interview violated his First Amendment rights to free speech. "[I]mprisonment does not

9

automatically deprive a prisoner of certain important constitutional protections including those of the First Amendment.  But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere," *Beard v. Banks*, 548 U.S. 521, 528 (2006), as long as the restrictions are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987) (discussing First Amendment rights as applied to prison regulations).  Because the Supreme Court has long recognized that certain expressive activities are properly denied to prisoners, including restrictions on "media interviews with individual inmates," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), Plaintiff's allegations about media policies interfering with an interview are not sufficient to state a claim.[5]

### 3. Eighth Amendment

Plaintiff's allegations concerning the conditions within segregation may be construed to assert an Eighth Amendment conditions of confinement claim.  To establish

---

[5] Even if the Court were to conclude that an interview cancellation could infringe a prisoner's First Amendment rights, a § 1983 claim based on such a violation would likely be barred by qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  To determine if something is "clearly established", courts must first "ask whether the contours of the right would have been 'sufficiently well-defined at the critical time' and, if so, 'whether it would have been clear to an objectively reasonable official, situated similarly to [the defendants], that the actions taken or omitted contravened the clearly established right.'" *Haley v. City of Boston*, 657 F.3d 39, 48 (1st Cir. 2011) (quoting *Limone v. Condon*, 372 F.3d 39, 48 (1st Cir. 2004)); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (describing the First Circuit's qualified immunity approach as three-part test).  Plaintiff does not cite, and I cannot find, any cases holding that preventing a prison inmate from interviewing someone from prison was a violation of the First Amendment. That right, therefore, is arguably not clearly established. *See Brown v. Cumberland Cty.*, 557 F. Supp. 3d 169, 179–80 (D. Me. 2021).

a conditions of confinement violation, a plaintiff must show that "from an objective standpoint, the conditions of his confinement deny him the minimal measure of necessities required for civilized living," and "from a subjective standpoint, the defendant was deliberately indifferent to inmate health or safety." *Surprenant v. Rivas*, 424 F.3d 5, 18–19 (1st Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff has not alleged sufficient facts to support a finding that any defendant acted with deliberate indifference to the conditions to which Plaintiff alleges he was subjected in segregation. Plaintiff, therefore, has not stated a claim for conditions of confinement. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676–77 (2009) (holding that on a claim against an individual, a plaintiff must allege facts that would support a finding that the individual, through his or her individual actions, violated Plaintiff's constitutional rights).

**B.     42 U.S.C. § 1985**

Section 1985 creates a cause of action against any two or more persons who conspire to (1) prevent United States officers from performing their duties, (2) deter any party or witness from participating in court proceedings, (3) injure a juror, or (4) go on the highway or premises of another with the purpose of depriving any person or class of person of equal protection of the laws. 42 U.S.C. § 1985. Plaintiff's allegations lack factual support for a conspiracy-related claim under sections 1985.[6]

---

[6] To the extent Plaintiff seeks to state a claim based on statutes prohibiting a criminal conspiracy, Plaintiff fails. "[I]t is well-settled that criminal statutes do not provide a private cause of action. . . ." *Lundgren v. Universal Wilde*, 384 F. Supp. 3d 134, 136 (D. Mass. 2019); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Generally, a private citizen has no authority to initiate a federal criminal prosecution. Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242.").

## C.     State Law Claims

Plaintiff's remaining claims are governed by state law. Because Plaintiff has not alleged an actionable federal claim,[7] given the early stage of the proceeding, the Court should not exercise supplemental jurisdiction over any state law claims. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims").

## Conclusion

Based on the foregoing analysis, after a review of Plaintiff's amended complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, I recommend the Court dismiss the matter.[8]

---

[7] In his amended complaint, Plaintiff listed multiple grounds for relief. In this Recommended Decision, I have addressed the potentially recognizable federal claims and determined that Plaintiff has not alleged an actionable federal claim regardless of Plaintiff's characterization of the claims.

[8] Regardless of whether the Court adopts this Recommended Decision, Plaintiff has not satisfied the requirements of Federal Rule of Civil Procedure 65, which would govern Plaintiff's request for immediate injunctive relief. Rule 65 provides in relevant part:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) Specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.

Fed. R. Civ. P. 65(b)(1). Further, even if Plaintiff has alleged an actionable claim, he has not established by record evidence a substantial likelihood that he will prevail. Immediate injunctive relief, therefore, is not warranted. *See New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.") Accordingly, if the Court does not adopt the recommended decision to dismiss the matter, I recommend the Court deny Plaintiff's motion for preliminary injunction and temporary restraining order.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of September, 2025.