UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEVEN MATTHEW CLARK, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | 2:25-cv-00178-LEW |
| MAINE DEPARTMENT OF CORRECTIONS, et al. | ) ) ) ) | |
| Defendants | ) | |

**ORDER ON REVIEW OF OBJECTION TO RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

On June 5, 2025, United States Magistrate Judge John C. Nivison filed with the Court, with a copy to the Plaintiff, who is proceeding pro se, his Recommended Decision After Review of Plaintiff's Complaint (ECF No. 11), screening Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 3) pursuant to 28 U.S.C. § 1915(e). The Magistrate Judge recommended that the Court dismiss the Complaint (ECF No. 1) unless the Plaintiff filed within 14 days an amended complaint to assert facts that would support a retaliation claim. The Plaintiff filed an Amended Complaint on July 22, 2025 (ECF No. 14).

On September 4, 2025, the Magistrate Judge filed with the Court, with a copy to the Plaintiff, his Recommended Decision After Review of Plaintiff's Amended Complaint (ECF No. 19). In this second Recommended Decision, the Magistrate Judge withdrew the initial Recommended Decision. Following review of Plaintiff's expanded allegations and

claims, the Magistrate Judge once again recommended the dismissal of Plaintiff's federal claims and relinquishment of jurisdiction over the related state law claims.

In the Amended Complaint, Plaintiff asserts federal claims under 28 U.S.C. § 1983, alleging deprivations involving speech retaliation (First Amendment), denial of due process (Fourteenth Amendment), and deliberate indifference (Eighth Amendment). Am. Compl. ¶¶ 97, 100, 113, 130, 146, 151, 238. The Amended Complaint also raises a claim under 28 U.S.C. § 1985. *Id.* ¶ 107. Title IX, 20 U.S.C. § 1681, is also asserted as a basis for relief. *Id.* ¶¶ 172, 193.

The Plaintiff filed an Objection (ECF No. 20) and a Motion to Continue (ECF No. 21). In terms of the Motion to Continue, Plaintiff states that he believes it would be productive to wait for answers to be filed to petitions he filed in state court challenging prison administrative actions under Maine Rule of Civil Procedure 80-C. This Court is at present conducting a screening of Plaintiff's in forma pauperis pleadings under 28 U.S.C. § 1915(e). As such, there is no need to consider pleadings filed in the state court and the request for a continuance is therefore DENIED.

Having reviewed and considered the Recommended Decision, together with the Plaintiff's Objection and the entire record, I have made a *de novo* determination of all matters adjudicated by the Recommended Decision. Based on this review, explained more fully below, I conclude that a limited portion of Plaintiff's claims should proceed to service. I therefore REJECT the Recommended Decision IN PART. I otherwise AFFIRM and ADOPT the Recommended Decision, IN PART, insofar as it recommends denial of Plaintiff's plea for immediate, preliminary injunctive relief, the dismissal of Plaintiff's

2

deliberate indifference claims, and the dismissal of the claim asserted under 28 U.S.C. § 1985, without further discussion. I separately assess a Title IX claim not addressed in the Recommended Decision, which I dismiss.

## Due Process

In his Objection, Plaintiff argues that a five-year computer restriction and an indefinite suspension from the educational wing precludes him from completing his Ph.D., in which he has a protected liberty or property interest. Obj. at 5-15. In the Recommended Decision After Review of the Amended Complaint, it is stated that "Plaintiff was evidently provided [with] a hearing and merely contests the outcome of the process." RD at 6. Because the Magistrate Judge determined that the requirements of due process were met, he did not address the baseline issue of whether Plaintiff had a liberty or property interest in his educational plans or job that would substantiate his due process claim. *Id.* at 5 n.3.

Based on my own reading of the Amended Complaint, it is not evident that Plaintiff stated that he received any meaningful hearings in connection with these deprivations of programming, such as review by a neutral officer, effectively pleading himself out of a case. I therefore consider, instead, whether Plaintiff's allegations raise a viable liberty or property interest that would be deserving of due process protection. To start, I conclude that Plaintiff's liberty claim is undercut by *Sandin v. Conner*'s "atypical and significant hardship" standard, *see* 515 U.S. 472, 484 (1995). "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature

of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. 484).

The First Circuit has elsewhere observed that the replacement of a "measure of freedom" an inmate has enjoyed in the past, such as access to educational and work opportunities, with restrictions "of a sort commonly associated with prison life" does not implicate the Due Process Clause—even if that change results in "a 'significant' deprivation." *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996) (removal from work release and return to regular confinement did not implicate the Due Process Clause). District Courts in this Circuit have acknowledged this obstacle in a variety of contexts. *See Shabazz v. Cole*, 69 F. Supp. 2d 177, 189-90 (D. Mass. 1999) (revocation of prison law library privileges "falls well below the kind of atypical and significant hardship" necessary to invoke the Due Process Clause); *Linton v. O'Brien*, 142 F. Supp. 3d 215, 218 (D. Mass. 2015) ("[t]he 14th Amendment does not recognize a liberty or property interest in educational rehabilitative programs" and "failure to provide rehabilitative programs . . . does not rise to the level of hardship" necessary to invoke the Due Process Clause). These precedents, I conclude, would give all of the individual defendants who are properly implicated in the due process claim qualified immunity against any damages award under 28 U.S.C. § 1983 because their alleged failure to afford due process would not have violated a clearly established right. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). I therefore dismiss all individual liability

4

due process claims for damages against the Defendants but will preserve the claim for declaratory and prospective injunctive relief against the most appropriate supervisory defendant(s).[1]

I preserve the claim to that limited extent because a curious feature of this case involves the special arrangement that attended Plaintiff's pursuit of an advanced degree, involving prior approvals and understandings that allegedly gave sufficient assurances to Plaintiff that he could proceed with his education, including by investing considerable funds in academic programming. It is conceivable that the due process requirements of unwinding such an endeavor should be more fulsome than what occurred,[2] potentially based on a property interest even if not a liberty interest. However, this preliminary observation is nothing more, and this ruling does not prejudice the remaining defendants' ability to file a motion to dismiss the claim.

## First Amendment

Plaintiff separately argues that the Magistrate Judge erred in concluding that he had failed to state a First Amendment retaliation claim, specifically with respect to his allegations that Defendant Simpson has threatened to transfer him out of state "if his friends, family, and academic mentors continue to advocate on his behalf."[3] Obj. at 15-17.

---

[1] The Department of Corrections will be dismissed because the State and its agencies are not subject to suit in federal court on Plaintiff's claims. *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009). Furthermore, "[n]o cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity." *Nieves–Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003).

[2] *Edwards v. Balisok*, 520 U.S. 641, 647 (1997) (expressing concern for presence of unbiased decision maker); *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974) (itemizing other procedural requirements).

[3] Plaintiff also appears to suggest that his transfer from the Maine State Prison in Warren to the Maine

The Magistrate Judge observed that Plaintiff's allegations are heavy on accusations of various forms of retaliation—basically anything that was decided against him or undermined his participation in education and employment programming—but lack a coherent narrative connecting adverse outcomes to protected activity. RD at 9. *See also Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011) ("Because prisoner retaliation claims are 'easily fabricated [ ] and ... pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003))). Plaintiff was advised that the Magistrate Judge's assessment would stand unless he objected to it.

In his Objection, Plaintiff acknowledges that he may have "muddied the waters by adding too much to his claim." Obj. at 15. He then asserts that he "alleges that he has been threatened by Defendant David Simpson to be transfer[r]ed out of state if his friends, family, and academic mentors continue to advocate on his behalf to the MDOC administration." *Id.* at 15-16. *See also* Am. Compl. ¶ 62. On its own, the threat of transfer to another state may support a claim. *See Mattei v. Dunbar*, 217 F. Supp. 3d 367, 377 (D. Mass. 2016) ("[T]hreats alone can constitute adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct.") (citing *Hill*

---

Correctional Center in Windham was also in retaliation from advocacy by friends and family. *See* Obj. at 17. This transfer does not appear to constitute adverse action—nor does he characterize it as such in the Amended Complaint. For example, Plaintiff alleges that Defendant Simpson told him and his family that the transfer would accommodate Plaintiff's education and work pursuits. Am. Compl. ¶ 66. Not long after his transfer, Plaintiff's education and work pursuits were accommodated. This is not consistent with the notion that the transfer was punitive or retaliatory.

6

*v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010)).  So limited, I will let the First Amendment claim proceed past the screening process against David Simpson, and will otherwise affirm and adopt the Magistrate Judge's assessment that dismissal of the First Amendment claim is otherwise warranted.  This ruling does not prejudice Defendant Simpson's ability to file a motion to dismiss the claim following service.

**Title IX**

The Recommended Decision on the amended complaint did not address Plaintiff's Title IX claim and the related allegation of sex discrimination.  Nor did Plaintiff's Objection take issue with the proposed dismissal of his case without analysis of the Title IX claim.  I offer a few words to explain why dismissal is warranted.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a). "[S]ubject to a list of narrow exceptions not at issue here, [Title IX] broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).  "Title IX does not provide for individual liability; only 'a recipient of federal funds may be liable in damages under Title IX' and 'only for its own misconduct.'" *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999)).

None of the individual defendants is subject to the Title IX claim.  Furthermore, when the Amended Complaint is read in light of the fact that the Department of Corrections

could only be subject to liability based on its own misconduct, I conclude that the allegations do not plausibly support a finding that Plaintiff's removal from educational and employment programming was because of Plaintiff's sex rather than other factors suggested in the Amended Complaint. Plaintiff alleges, among other things, that Defendant Getz (the alleged harasser) and several other staff members and administrators had it out for all of the graduate programs that prisoners were participating in, not just his, evidently because of the demands they imposed on administration. Am. Compl. ¶¶ 9, 16, 43, 105, 246, 247. Furthermore, Plaintiff participated in both his education and employment programs well after his alleged reports of inappropriate conduct by Getz, and he alleges that other officials within both the Maine State Prison and the Maine Correctional Center were responsible for decisions that effectively deprived Plaintiff of these opportunities. It is thus implausible that the Department's alleged failure to rescue Plaintiff from these allegedly improper sanctions was based on Plaintiff's sex rather than another consideration. I therefore conclude that Plaintiff has failed to state a Title IX claim against the Department.

**State Law Claims**

Plaintiff asserts a group of state law claims against every named defendant, in most instances without differentiation. These claims assert emotional distress, negligence, breach of contract, tortious interference with contractual relations, whistleblower retaliation under 26 M.R.S. § 833(1)(a), and defamation. All of the underlying circumstances that inform these claims involve the performance of discretionary functions or duties associated with prison administration. As such, assuming that the state law tort

duties[4] Plaintiff would assign to Defendants are actually owed to him by them in the prison context, the individual defendants are nonetheless under state law "absolutely immune from personal civil liability," 14 M.R.S. § 8111(1), except for conduct "so egregious" that it "exceeds as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity." *Bowen v. Dep't of Human Servs.*, 606 A.2d 1051, 1055 (Me. 1992) (quoting *Polley v. Atwell*, 581 A.2d 410, 414 (Me. 1990)).

The circumstances of this case involve prison administration associated with a variety of components of life in prison, including housing determinations and participation in betterment programs that are discretionary in nature. The facts alleged do not plausibly depict actions "so egregious" that they would exceed the scope of any and all discretion that an official might exercise in regard to such matters. At most, the allegations plausibly suggest some instances in which discretion may have been abused. However, discretionary function immunity applies even if the discretion is abused. *Hildebrand v. Wash. Cnty. Comm'rs*, 33 A.3d 425, 429 (Me. 2011) (citing 144 M.R.S. § 8111(1)(C)). *See also Roberts v. Maine*, 731 A.2d 855, 857 (Me. 1999) ("The management and care of prisoners is a discretionary function.") (quoting *Erskine v. Comm'r of Corr.*, 682 A.2d 681, 686 (Me. 1996)). For these reasons, even assuming that the allegations would state one or more plausible claim, the claims are nevertheless subject to dismissal because they seek

---

[4] Plaintiff's claim that he had a binding contract with some or all Defendants is a conclusory assertion and is, moreover, implausible. Nor can Plaintiff sue the Department of Corrections in federal court as opposed to state court on any of his claims due to the immunity conferred on the State of Maine and arms of the state by the Eleventh Amendment to the U.S. Constitution. *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997); *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002).

monetary relief against defendants who are immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(iii).

## Conclusion

The Recommended Decision of the Magistrate Judge (ECF No. 19) is hereby AFFIRMED and ADOPTED, IN PART. Plaintiff's request for an immediate award of injunctive relief preventing transfer is DENIED and his Motion for Continuance (ECF No. 21) is DENIED.

Plaintiff's § 1983 due process claim is DISMISSED as to all defendants to the extent Plaintiff seeks monetary damages. The claim will be served exclusively on Defendants Chris Arbour and David Simpson, deputy wardens of programs at the Maine Correctional Center and the Maine State Prison, respectively, and will be limited to prospective relief only.

Plaintiff' § 1983 First Amendment claim is DISMISSED as to all defendants except Defendant David Simpson, and the claim is limited to a claim alleging a threatened out of state transfer.

Plaintiff's § 1983 deliberate indifference claim is DISMISSED as to all defendants.

Plaintiff's § 1985 claim is DISMISSED as to all defendants.

Plaintiff's Title IX claim is DISMISSED as to all defendants.

Plaintiff's state law claims are DISMISSED.

**SO ORDERED.**  Dated this 21st day of October, 2025.

/s/ Lance E. Walker
**CHIEF U.S. DISTRICT JUDGE**