UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEVEN MATTHEW CLARK,<br><br>Plaintiff<br><br>v.<br><br>CHRIS ARBOUR and DAVID SIMPSON,<br><br>Defendants | ) | No. 2:25-cv-00178-LEW |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff Steven Matthew Clark, pro se, brought this action alleging various claims for violations of his civil rights during his incarceration. Following the Court's earlier, initial review of the Plaintiff's Amended Complaint (ECF No. 14), *see* 28 U.S.C. §§ 1915, 1915A, claims for deprivation of due process and First Amendment rights were served on the Defendants. *See* Order (ECF No. 22). The matter is now before the Court on the Defendants' Motion to Dismiss (ECF No. 26), which the Plaintiff has opposed (ECF Nos. 27 and 31).[1]

To survive dismissal, the Plaintiff must plead "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). His statement must "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Plausible means "something more than merely possible." *Id.*

[1] Chris Arbour and David Simpson are the only defendants who have not been dismissed from this matter. *See* Order (ECF No. 22).

I accept the Plaintiff's factual allegations as true and consider whether he has described a plausible, rather than merely conceivable, claim. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). But I may ignore conclusory statements that just recite the elements of the claim. *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "This is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).

Upon review of the motion papers and careful consideration of the arguments contained therein, the Defendants' Motion to Dismiss will be granted. The Defendants correctly observe that the atypical and significant hardship standard sets too high a bar for the Plaintiff's liberty-based due process theory, as I indicated in my prior order. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Plaintiff contends that we are in a new era of corrections and that internet access replete with remote work and online educational opportunities is now the norm for many incarcerated persons, such that the ordinary incidents of prison life have changed in the years since the Supreme Court's 1995 *Sandin* opinion. I am not persuaded that this contention is viable under *Sandin* because the enjoyment of internet-based liberties is a privilege or generosity, the absence of which is not an atypical and significant hardship. *See*, *e.g.*, *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 504 (S.D.N.Y. 2012).

Additionally, although the Plaintiff has argued that the revocation of his computer privileges has imposed a financial loss associated with his mother's payment of tuition and his inability to pay her back, Plaintiff has not alleged facts from which it should be inferred that the State of Maine afforded him (or his mother) any guarantee under state law that his participation in online work or school was protected like property rather than permitted like a revocable privilege. On this subject, the most salient material brought to my attention has been a Maine Department of Corrections Policy that clearly indicates that the Commissioner or his designee retains "complete discretion" to provide or withhold computer access. Mot. at 8 (citing MDOC Policy 24.10); MDOC Policy 24.10 at Proc. H.5 ("The Commissioner, or designee, may terminate a prisoner's computer use and/or internet access at any time for any reason at his or her complete discretion."). Because state officials retain complete discretion over this aspect of prison life, it is not a "protected entitlement" for purposes of due process. *Town of Castle Rock*, *Colorado v. Gonzales*, 545 U.S. 748, 756 (2005).

Given these considerable legal obstacles to Plaintiff's due process claim, I agree with the Defendants that the Plaintiff has failed to state a claim for which relief may be granted and that his legal remedy, if one is to be achieved, is by means of post-deprivation proceedings, including a petition for review by the state court in accordance with Rule 80C of the Maine Rules of Civil Procedure. Evidently, such a proceeding is now under way.

As for the Plaintiff's claim of retaliation in violation of the First Amendment, this claim was preserved by the prior order only insofar as the Plaintiff alleged the threat of transfer by David Simpson if third parties continued to advocate on his behalf. *See* Order

on Review of Obj. to Rec. Dec. at 6-7 (ECF No. 22); Am. Compl. ¶ 62. The Defendants argue that advocacy voiced by others on behalf of the Plaintiff does not qualify as protected speech activity by the Plaintiff. Mot. at 12. They also argue that the allegations do not disclose any adverse action. *Id.* Without speech activity or adverse action, they say, dismissal is required. *Id.*

In response, the Plaintiff asserts:

> The Plaintiff has a First Amendment right to be able to pursue his education and converse with academics, professionals, and those in the field of reentry without adverse action being taken against him. The Plaintiff also has a First Amendment right to have people who support him without threats of being shipped to another state.

Response at 12 (ECF No. 27). Plaintiff further offers that the sanction imposed on him, a five-year suspension of computer access, is particularly harsh.

I am not convinced that Plaintiff's discretionary participation in an online educational program and the communications and associations arising from it qualify for protection under the First Amendment. *See Jones v. N. Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 132 (1977) ("First Amendment associational rights . . . must give way to the reasonable considerations of penal management."). To the contrary, I conclude that in the prison context the revocation of internet privileges does not inherently rise to the level of a deprivation of associational rights and that a threat of adverse consequences based on outside agitation in support of an incarcerated person's access to the internet and related programming does not qualify as the prisoner's own speech for purposes of a retaliation claim. Authority supporting the idea that outside advocacy from members of the public directed to prison administrators can serve as the prisoner's own protected speech for

purposes of the first element of a retaliation claim has proved elusive and the Plaintiff has not provided me with that authority in opposition to the Defendants' argument.

The Plaintiff otherwise offers that "his troubles did arise after filing a complaint and a week before the interview with Bobby Kennedy Jr." Response at 9. Certainly, the pleadings portray an individual who was steadily speaking out in a variety of ways that might be regarded as petitioning activity. But as the Magistrate Judge observed in the Recommended Decision that screened the Plaintiff's amended complaint, "Although the amended complaint includes multiple references to 'retaliation,' most of the references are in the context of the alleged adverse action taken against Plaintiff, rather than describing the alleged protected conduct and the relationship between the conduct and the adverse action." RD at 9 (ECF No. 19). In fact, it is exceedingly difficult to articulate what petitioning activity preceded what adverse action, why the two events are logically related, and who would be the proper defendant. Moreover, the narrative seems to reflect that privileges were extended and restricted, then extended and restricted again, back and forth, on a variety of occasions. While Plaintiff is entitled to favorable inferences, I am not inclined to invent interpretations based on guesswork. Even pro se plaintiffs are "required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). My reticence in this regard is also guided by the principle that overindulgence toward conjectural or even weakly suggestive retaliation claims raised in the prison context is disfavored.

> Because prisoner retaliation claims are "easily fabricated[ ] and ... pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.2003) (internal quotation marks omitted).

*Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011) (resolving such a claim by affirming the entry of summary judgment). *Hannon* addressed a summary judgment ruling, of course, but in this case, I conclude that dismissal is warranted given the Plaintiff's failure to connect whatever dots exist in his over 70-page amended complaint in such a way that each element of a First Amendment relation claim is plainly outlined against a particular defendant. Even at this juncture, the Plaintiff's effort in regard to his First Amendment claim is more as an afterthought than a concerted effort.

Defendants' Motion to Dismiss (ECF No. 26) is GRANTED. Plaintiff's request for preliminary relief that restores his educational and work privileges (see ECF No. 32) is, accordingly, DENIED AS MOOT.

SO ORDERED.

Dated this 17th day of September, 2026.

/S/ Lance E. Walker
CHIEF U.S. DISTRICT JUDGE